UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------x
MOHAMMED DAUD HOSAIN-BHUIYAN,　　　　:
　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　:
　　　　　　　　　　　　Plaintiff,　　　　　　　　　　　:
v.　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　:　　**OPINION AND ORDER**
　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　:
BARR LABORATORIES, INC., and　　　　　　:　　17 CV 114 (VB)
TEVA PHARMACEUTICALS USA, INC.,　　　:
　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　:
　　　　　　　　　　　　Defendants.　　　　　　　　:
--------------------------------------------------------------x

Briccetti, J.:

Plaintiff Mohammed Daud Hosain-Bhuiyan ("Hosain") brings this action against his former employers Barr Laboratories, Inc. ("Barr"), and Teva Pharmaceuticals USA, Inc. ("Teva"), for breach of contract and violations of Article 6 of the New York Labor Law ("NYLL"), alleging Teva failed to pay Hosain for his bonus, severance, or stock options after terminating him in 2016.

Before the Court is defendants' motion for summary judgment. (Doc. #72).

For the reasons set forth below, defendants' motion is GRANTED.[1]

The Court has subject matter jurisdiction under 28 U.S.C. § 1332.

## BACKGROUND

The parties have submitted briefs, statements of fact pursuant to Local Civil Rule 56.1, declarations and affidavits, and supporting exhibits, which reflect the following factual background.

---

[1] Hosain's opposition to the motion does not defend the viability of his claims for breach of the covenant of good faith and fair dealing and for "reduction in force" compensation. Accordingly, the Court deems those claims abandoned and orders them dismissed. See Jackson v. Fed. Exp., 766 F.3d 189, 198 (2d Cir. 2014) ("[A] court may, when appropriate, infer from a [counseled] party's partial opposition that relevant claims or defenses that are not defended have been abandoned.").

Barr hired Hosain in 1998. In 2008, Hosain became a Teva employee after Teva acquired Barr. Hosain held several positions at Teva, including manager of technical services, senior manager of technical services, and associate director of validation and commercial technical services.

In May 2015, Hosain became an associate director of "product robustness." According to an offer letter dated May 11, 2015, Hosain, an at-will employee, would earn an annual salary of $167,460 and be eligible to participate in the Teva 2015 Bonus Program, a discretionary program under which employees could earn a bonus equal to 20% of their annual base salary. As a part of his employment with Teva, Hosain also received stock options and was eligible for severance pay.

While Hosain was employed at Teva, he and Mohammed Zafar Iqbal ("Iqbal"), another Teva employee, had ownership interests in Suffern Pharmacy, a retail pharmacy and wholesale supplier of branded drugs, as well as in another entity called Monroe Pharmacy. Hosain served as Suffern's vice president and secretary.

In early 2015, Hosain and Iqbal arranged for Suffern to supply certain branded drugs to Teva. Teva's Research and Development Department obtains branded drugs after the applicable patents on those drugs expire or when they are about to expire and, through clinical testing, creates generic versions of those drugs. Between February and May 2015, Teva purchased approximately $470,000 in branded drugs from Suffern. Suffern made approximately $50,000 in profit from these transactions. In July 2015, Teva terminated its business relationship with Suffern.

In late 2015, as part of a routine audit, a Teva auditor identified Suffern as a supplier in need of further review. As a result of the audit, and because two Teva employees (including

Hosain) had ownership interests in Suffern, the review of Suffern was transferred to Teva's Office of Business Integrity ("OBI"), an internal department that investigates possible violations of Teva's Code of Conduct and other policies.

James Mikalic, a former FBI agent and former Assistant Director of Intelligence for the New York State Office of Homeland Security, was the OBI investigator assigned to the matter. Mr. Mikalic's initial investigation lasted from December 8, 2015, to February 9, 2016, and he documented the results of his investigation in a report, dated February 9, 2016, and updated on March 8, 2016. (Def.'s App. at A.158–78 (the "Mikalic report")).[2]

As part of his investigation, Mr. Mikalic conducted interviews and reviewed purchase orders, invoices, registration documents, and Hosain's Teva-owned email and computer files.

The investigation determined, and Hosain does not dispute, that Hosain did not disclose his ownership interest in Suffern to Teva in writing, and that he used his Teva email to correspond on behalf of his outside business interests during regular Teva business hours.

Teva terminated Hosain on February 26, 2016.

Hosain was no longer employed at Teva when it paid bonuses under the 2015 Bonus Program. Teva did not pay Hosain any severance. Hosain did not exercise his stock options.

---

[2] Hosain argues the Court should not consider the Mikalic report for purposes of summary judgment, because it consists of hearsay, double hearsay, and triple hearsay. (Pl. Opp. at 9). Pursuant to Rule 56(c)(2) of the Federal Rules of Civil Procedure, a party may object at summary judgment to evidence that would not be admissible at trial. The Court finds that the Mikalic report is a business record under Federal Rule of Evidence 803(6) and thus is not inadmissible hearsay. Hosain has not, as part of his objection to the report, made an adequate showing that the report's "source of information or the method or circumstances of preparation indicate a lack of trustworthiness." Fed. R. Evid. 803(6)(E). Similarly, there is no evidence in the record that the Mikalic report is inauthentic. The Court also does not find the report to be unfairly prejudicial. To the extent defendants rely on internal hearsay within the report, the Court considers each use of the report to determine admissibility.

# DISCUSSION

I. <u>Legal Standard</u>

The Court must grant a motion for summary judgment if the pleadings, discovery materials before the Court, and any affidavits show there is no genuine issue as to any material fact and it is clear the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322 (1986).

A fact is material when it "might affect the outcome of the suit under the governing law. . . . Factual disputes that are irrelevant or unnecessary" are not material and thus cannot preclude summary judgment. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986).

A dispute about a material fact is genuine if there is sufficient evidence upon which a reasonable jury could return a verdict for the non-moving party. See <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. at 248. The Court "is not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried." <u>Wilson v. Nw. Mut. Ins. Co.</u>, 625 F.3d 54, 60 (2d Cir. 2010) (citation omitted). It is the moving party's burden to establish the absence of any genuine issue of material fact. <u>Zalaski v. City of Bridgeport Police Dep't</u>, 613 F.3d 336, 340 (2d Cir. 2010).

If the non-moving party has failed to make a sufficient showing on an essential element of his case on which he has the burden of proof, then summary judgment is appropriate. <u>Celotex Corp. v. Catrett</u>, 477 U.S. at 323. If the non-moving party submits "merely colorable" evidence, summary judgment may be granted. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. at 249-50. The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts, and may not rely on conclusory allegations or unsubstantiated speculation." <u>Brown v. Eli Lilly & Co.</u>, 654 F.3d 347, 358 (2d Cir. 2011) (internal citations omitted). The

4

mere existence of a scintilla of evidence in support of the non-moving party's position is likewise insufficient; there must be evidence on which the jury could reasonably find for him. Dawson v. County of Westchester, 373 F.3d 265, 272 (2d Cir. 2004).

On summary judgment, the Court construes the facts, resolves all ambiguities, and draws all permissible factual inferences in favor of the non-moving party. Dallas Aerospace, Inc. v. CIS Air Corp., 352 F.3d 775, 780 (2d Cir. 2003). If there is any evidence from which a reasonable inference could be drawn in favor of the non-moving party on the issue on which summary judgment is sought, summary judgment is improper. See Sec. Ins. Co. of Hartford v. Old Dominion Freight Line, Inc., 391 F.3d 77, 83 (2d Cir. 2004).

In deciding a motion for summary judgment, the Court need only consider evidence that would be admissible at trial. Nora Bevs., Inc. v. Perrier Grp. of Am., Inc., 164 F.3d 736, 746 (2d Cir. 1998).

A court may grant summary judgment on a contract claim when the contractual language is "plain and unambiguous." Zurich Am. Ins. Co. v. ABM Indus., Inc., 397 F.3d 158, 164 (2d Cir. 2005) (quoting Brass v. Am. Film Techs., Inc., 987 F.2d 142, 148–49 (2d Cir. 1993)). "Contract language is not ambiguous if it has 'a definite and precise meaning, unattended by danger of misconception in the purport of the [contract] itself, and concerning which there is no reasonable basis for a difference of opinion.'" Hunt Ltd. v. Lifschultz Fast Freight, Inc., 889 F.2d 1274, 1277 (2d Cir. 1989) (alteration in original) (quoting Breed v. Ins. Co. of N. Am., 46 N.Y.2d 351, 355 (1978)).

II. Teva's Motion for Summary Judgment

At the outset, the Court notes this action follows one brought by Iqbal, Hosain's coworker and co-owner of Suffern and Monroe pharmacies. In that case, this Court found that

Teva properly terminated Iqbal for cause in connection with Suffern, and that Iqbal was not contractually entitled to many of the same payments plaintiff seeks here. See Iqbal v. Teva Pharm. USA, Inc., 2017 WL 6729190 (S.D.N.Y. Dec. 28, 2017) (the "Iqbal Opinion and Order"), aff'd, 753 F. App'x 50 (2d Cir. 2018) (summary order).

Like Iqbal, Hosain argues he was improperly terminated for cause and is contractually entitled to payment for severance and stock options Teva withheld. Hosain also argues he is entitled to his bonus and other payments as earned wages under the NYLL.

The Court disagrees.

Teva is entitled to summary judgment as to Hosain's breach of contract claims because there is no genuine dispute that Teva properly terminated Hosain for cause for violating Teva's policies; and under the plain language of those policies, Hosain is not entitled to severance payments or to exercise his stock options. Teva is also entitled to summary judgment as to Hosain's NYLL claims.

    A.    Breach of Contract Claims

        1.    Hosain Was Terminated for Cause

Teva argues Hosain was properly terminated for cause because he violated Teva's Conflicts of Interest Policy, Outside Employment Policy, and Electronic Communications Policy.[3]

The Court agrees.

---

[3] Teva also argues Hosain is not entitled to these payments because the May 11, 2015, offer letter from Teva to Hosain is not an employment contract. The Court need not resolve this issue because it is undisputed Hosain was an "at will" employee, and the nature of the offer letter is not dispositive of the motion. (Def.'s App. at A.069).

Behavior that constitutes cause for termination is defined by contract, including company policies and procedures, even if the employee is at will. See Benoit v. Commercial Capital Corp., 2008 WL 3911007, at *6 (S.D.N.Y. Aug. 25, 2008). If an employee denies this underlying conduct, the question whether an employee was properly terminated for cause is generally a question of fact not suitable for disposition at summary judgment. Id. (collecting cases).

Here, Hosain does not dispute his underlying conduct at the time of his termination. And there is no genuine dispute that this conduct violated several Teva policies, including the supplemental policies discussed below and the Teva Code of Conduct. Under the Code of Conduct, the penalty for such violations "may include termination of employment." (Def.'s App. at A.148; see also id. at A.114 (incorporating supplemental policies)).

First, Hosain violated the Conflicts of Interest Policy by failing to disclose to Teva, in writing, his interest in Suffern. The policy, as detailed in a Teva memorandum dated July 1, 2012, states:

> Each employee must be free from any actual or potential conflict of interest and must avoid even the appearance of such a conflict in dealing with other businesses or individuals on behalf of Teva. A conflict of interest may arise in any situation in which an employee's judgments and loyalties are divided between any business or outside interest that, to any degree, is incompatible with the best interest of Teva. . . . Types of activities and relationships that could potentially affect an employee's independent judgment may include outside employment relationships . . . [or] personal investments . . . . For this reason, <u>employees must disclose, in writing and in advance, any potential or actual conflict of interest for resolution</u>. . . . Employees should avoid outside business or consulting activities that would divert their time, interest or talents from Teva business. <u>The employee's manager must approve, in writing, any outside or consulting activity</u> for a vendor, a supplier of goods or services, . . . or a business that provides services to or related to the healthcare industry.

(Def.'s App. at A.102–03) (emphasis added).

7

Although Hosain argues that others at Teva knew of his coworker Iqbal's ownership interest in Suffern (and presumably Hosain's own interest in Suffern), the Conflicts of Interest Policy requires Hosain to provide notice of his interest to Teva in writing. Hosain offers no evidence that he provided notice to Teva in writing concerning Suffern or any other outside employment that could raise a potential conflict of interest.

Hosain also contends that Iqbal's manager, Tony Tong, provided written approval, as required by Teva policy, when Mr. Tong signed a February 12, 2015, confidentiality agreement between Suffern and Barr Laboratories. (Pl.'s App. at A.180–84). The Court already rejected this argument in the Iqbal Opinion and Order. That confidentiality agreement protects proprietary information exchanged in the course of business transactions; it does not disclose or otherwise document approval of Hosain's or Iqbal's ownership interest in Suffern. Nor does a June 17, 2015, email sent to several Teva employees that refers to "put[ting] together [a master services agreement] to include some barriers for the work with" Suffern suffice as written approval: as plaintiff concedes, no such agreement was ever finalized. (Id. at A.192).

Second, Hosain violated the Outside Employment Policy and Electronic Communications Policy by using Teva work time and Teva-owned technology to further Suffern's interests.

The Outside Employment Policy states: "It is the policy of Teva that no outside employment or interests interfere with the ability of employees to satisfactorily perform their job duties and meet scheduling demands and other work requirements of Teva." (Def.'s App. at A.151). The policy continues: "Outside employment or interests will present a conflict of interest if they have or present the opportunity to have an adverse impact on Teva." (Id.). The policy also notes: "Teva may opt to terminate the employee's employment if Teva, at its sole

8

discretion, determines that the circumstances of the employee's violation of this policy renders continued employment inappropriate." (Id.).

Similarly, under the Electronic Communications Policy, dated April 15, 2014, "[a]ll electronic communication systems and hardware must be used primarily for business purposes. Personal use must remain limited, incidental and in no way affect productivity." (Def.'s App. at A.152–53). The consequences of a violation include termination of employment.

It is undisputed that Hosain used his Teva computer and email to conduct business for Suffern and his other businesses.[4] (Def.'s App. at A.22; A.169). These emails were voluminous; for example, one Suffern transaction generated 115 emails in one month. (Id. at A.166).

Hosain argues that the policy's language prohibits outside employment only if it interferes with the employee's job performance. He reasons that because he was receiving positive reviews, his employment with Suffern did not interfere with his job at Teva. However, the policy is considerably broader. It prohibits outside employment that "present[s] the opportunity to have an adverse impact on Teva." (Def.'s App. at A.151). Hosain does not argue his interest in Suffern could not present such opportunity in the future. Moreover, the policy provides that Teva, at its sole discretion, determines whether an employee's violation of this policy is a fireable offense.

Because Hosain's underlying conduct is undisputed, and that conduct violated Teva policies, there is no genuine issue of material fact that Teva properly terminated Hosain for cause.

---

[4] The Mikalic report summarizes the relevant communications. The content of the communications themselves are not offered for their truth, but to show Hosain sent such emails. Therefore, these portions of the report are not hearsay. See Fed. R. Evid. 801(c)(2).

2. Hosain Is Not Eligible for Severance Pay

Having determined Teva terminated Hosain for cause, the terms of Teva's policies render him ineligible for severance pay.

Teva's Severance Policy states:

> While Teva reserves the right to determine, on a case-by-case basis, whether an individual employee is eligible for severance pay, the following circumstances will make an individual ineligible to receive severance benefits from Teva: . . . Termination for misconduct, or violation of company policies, procedures, practices or Ethics and Code of Conduct.

(Def.'s App. at A.098).

Teva terminated Hosain because he was indisputably in violation of several Teva policies. Therefore, under the terms of the Severance Policy, Teva does not owe Hosain severance pay.

Accordingly, Hosain's claim for severance pay is dismissed.

3. Hosain Is Not Eligible to Exercise Stock Options

Teva also argues Hosain was not entitled to exercise his remaining stock options because he was terminated for cause.

The Court agrees.

Under subsection 5(f) of Teva Pharmaceutical Industries Limited 2010 Long-Term Equity-Based Incentive Plan (the "Stock Option Policy"), "[i]n the event of a Participant's Termination with the Employer prior to the Expiration Date by the Employer for Cause, all of such Participant's Options (whether or not vested) shall immediately expire as of the date of such Termination." (Def.'s App. at A.089).

Subsection 2(g) of the Stock Option Policy defines termination "for cause" in substantially the same way as the Court defined it above:

> "Cause" means, in the absence of an effective employment agreement between a Participant and the Employer otherwise defining cause . . . (iii) any material violation of the policies of the Company or its Affiliates, including, but not limited to . . . those set forth in the manuals or statements of policy of the Company or its Affiliates.

(Def.'s App. at A.081).

Here, it is undisputed Hosain never exercised or sold his Teva options before his termination. Because Hosain was indisputably terminated for cause, any remaining stock options expired upon termination.

Hosain now argues—for the first time—that he "lost" Teva stock he purchased "wherein dividends were reported." (Doc. #76 ("Pl. Opp.") at 27). In support, he submitted a December 31, 2015, bank statement showing "shares from rollover" worth $4,791.72. (Pl.'s App. A.123). Hosain provides no further explanation other than asserting he "purchased shares of Teva stock worth close to $5,000, which the Plaintiff also lost." (Pl. Opp. at 27). He does not explain how he lost stock or how this loss is related to his claims here. Nor did Hosain allege anything concerning this lost stock in the second amended complaint. (See Doc. #54 ("SAC") ¶ 20 ("Plaintiff acquired stock options in Teva"); id. ¶ 32 ("Plaintiff is presently owed . . . $50,508.23 in loss of stock options award"); id. ¶ 41 (plaintiff seeks damages for loss of "Teva stock option awards")). Because Hosain did not plead this claim, the Court will not consider it. See Lyman v. CSX Transp., Inc., 364 F. App'x 699, 701 (2d Cir. 2010) (summary order).

Accordingly, Hosain's claim for stock options is dismissed.

11

B.  NYLL Claims

Teva argues Hosain's bonus does not qualify as wages, and therefore, he is not entitled to payment of that bonus under the NYLL.[5]

The Court agrees.

The NYLL defines wages as "the earnings of an employee for labor or services rendered, regardless of whether the amount of earnings is determined on a time, piece, commission or other basis." N.Y. Lab. Law § 190(1). Courts have held that wages under this statute do not include "discretionary additional remuneration, as a share in a reward to all employees for the success of the employer's entrepreneurship." Truelove v. Ne. Capital & Advisory, Inc., 95 N.Y.2d 220, 224 (2000); Apple Mortg. Corp. v. Barenblatt, 162 F. Supp. 3d 270, 292 (S.D.N.Y. 2016).

However, a bonus or other incentive compensation "expressly linked" to an employee's "labor or services personally rendered" constitutes wages if the compensation is guaranteed and non-discretionary as a term and condition of employment. Ryan v. Kellogg Partners Institutional Servs., 19 N.Y.3d 1, 16 (2012). For instance, an employer's agreement, as a condition of employment, to pay an employee's requested earnings of $350,000, half as annual salary and half as a guaranteed bonus, indicated the employee's bonus qualifies as wages under the NYLL. Id. Nevertheless, an employer's "preliminary bonus calculations" alone do not transform a discretionary bonus into "an unforfeitable guarantee." Iqbal v. Teva Pharm. USA, Inc., 753 F. App'x 50, 56 (2d Cir. 2018) (summary order).

---

[5]  The parties disagree whether Hosain, by virtue of his position at Teva, can bring a claim under Article 6 of NYLL. The Court need not reach this issue. Assuming without deciding that Hosain can do so, his bonus does not fall within the definition of wages protected by the NYLL.

Here, Teva retained discretion to award bonuses. The plain language of Teva's Employee Incentive Compensation Policy dated July 1, 2012, provides: "The Company reserves the right to modify or terminate these [incentive] plans at any time at its discretion," and that "[e]ligibility to participate in the plan does not guarantee [a] bonus award." (Def.'s App. at A.076). The Second Circuit has recognized that the bonus policy at issue here is discretionary. Iqbal v. Teva Pharm. USA, Inc., 753 F. App'x at 55. Indeed, Hosain concedes he was not guaranteed a bonus solely under the terms of policy.

Instead, Hosain argues his bonus was no longer discretionary because Teva already approved and awarded it in Teva's internal personnel system, or GTOP. In support, Hosain attaches an undated and unlabeled printout from that system with category headings including "Eligible Salary," and "Bonus Amount," and "Target Bonus." (See Pl.'s App. at A.187). By its terms, this language does not constitute an agreement to pay the full amount allocated, or any amount at all. Similarly, the act of budgeting salary costs does not create an obligation to pay those salaries as stated on GTOP, retroactively or otherwise. Hosain offers no evidence that Teva's determination was anything more than a "preliminary bonus calculation." Iqbal v. Teva Pharm. USA, Inc., 753 F. App'x at 56. Further, Hosain conceded in a deposition that no one stated he would be paid a bonus in 2016 for his work the prior year. Therefore, there is no genuine dispute that Hosain's bonus does not constitute wages under the NYLL.

Furthermore, to the extent Hosain argues he is entitled to exercise his stock options and receive severance pay as unpaid wages or benefits under the NYLL, because the Court has already determined that Hosain is not contractually entitled to severance or stock, Hosain has no NYLL claim arising from those benefits. Kannilowicz v. Hartford Fin. Servs. Grp., Inc., 494 F. App'x 153, 158 (2d Cir. 2012) (summary order) (noting plaintiff cannot assert a claim for wages

under NYLL if he does not have an enforceable contractual right to such wages); Dreyfuss v. eTelecare Glob. Sols.-US, Inc., 2010 WL 4058143, at *4 (S.D.N.Y. Sept. 30, 2010) (collecting cases).

Accordingly, defendants are entitled to summary judgment on Hosain's NYLL claims.

## CONCLUSION

The motion for summary judgment is GRANTED.

The Clerk is instructed to terminate the pending motion (Doc. #72) and close this case.

Dated: August 7, 2019
       White Plains, NY

                SO ORDERED:

                _____
                Vincent L. Briccetti
                United States District Judge